(51 South. 679.)

No. 18,034.

## WEBER'S HEIRS v. MARTINEZ.

### In re MARTINEZ.

(Feb. 14, 1910. Rehearing Denied March 14. 1910.)

*(Syllabus by the Court.)*

1. TAXATION (§ 805*)—CONTESTING ASSESSMENT—PRESCRIPTION.

The tax debtor is barred by the constitutional prescription of three years from contesting the fact of the assessment of his property, sold for taxes, save in connection with the assertion that the description in the tax deed and in the assessment fail to identify the property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. § 805.*]

2. TAXATION (§ 421*)—ASSESSMENT—DESCRIPTION OF PROPERTY.

Where A., the tax debtor, owns certain lots in a particular square, the municipal number and street boundaries of which are. given, the property is sufficiently described for the purposes of its assessment and sale for taxes, as "certain lots" (in the square designated) "assessed to A.," such description including all the lots owned by A. in the square described.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–735; Dec. Dig. § 421.*]

Land, J., dissenting.

Certiorari to Court of Appeal, Parish of Orleans.

Action by the heirs of Anton Weber against Joseph P. Martinez. Judgment for defendant was reversed by the Court of Appeal, and defendant applies for certiorari or writ of review. Judgment of Court of Appeal reversed, and judgment of district court affirmed.

George Montgomery and J. Zach Spearing, for plaintiffs. James Wilkinson, for defendant.

## Statement of the Case.

MONROE, J. This is an application for the review of a judgment rendered by the Court of Appeal, parish of Orleans.

It appears from the record, which has been forwarded from that court, that on March 13, 1844, Anton Weber acquired by purchase certain real estate in what was then called "Islet No. 40," in the Faubourg Marigny (now the Third district of New Orleans), bounded by New Orleans, St. Bernard, Liberal, and Force streets, the property in question being described as eight lots, with certain measurements, forming, together, a larger lot, having an irregular shape, and occupying the corner of New Orleans and Liberal streets. This suit was brought by four of Weber's grandchildren to annul the tax title under which defendant holds the property. Neither of the plaintiffs ever saw their grandfather or know when he died; the eldest of them (who was 33 years old in August, 1908) testifying in effect, that he died before he (the witness) was born. Plaintiffs' mother, who was Weber's only child, died in 1882, and it does not appear that she or they have ever been in possession of the property, though it does appear that they have never paid any taxes on it, and in fact they testify that they only learned of its existence some five years prior to the giving of their testimony, or, say, in 1903. In the meanwhile, to wit, on March 14, 1885, "Charles Cavanac, state tax collector," executed a notarial act containing the usual recitals with regard to assessment, advertisement, adjudication, etc., in which he declared that, in default of any bid or offer to pay the taxes, he had adjudicated and thereby conveyed to the state for the taxes of 1883 "certain lots of ground and improvements thereon in the Third district of the city of New Orleans, in square 1179, bounded by New Orleans, Liberal, St. Bernard, and Force streets; said lots front on New Orleans street. Which said property

was duly and legally assessed in the name of Antoine Weber," etc. (The act by which the grandfather of plaintiffs acquired, it may here be stated, gives his name as Anton Weber.) The act thus referred to was recorded on August 29, 1885. We next have the testimony of defendant to the effect that in 1886 the property was adjudicated to him for the taxes of 1873 to 1878, under Act 82 of 1884, and he produces a certificate from the tax collector of date July 24, 1904, to that effect, to which certificate no importance can be attached since there is no law authorizing its issuance. Defendant, however, further testifies that, whilst he did not obtain a title pursuant to the adjudication mentioned because he did not comply with the required conditions, he nevertheless went into possession of the property by putting a fence around it and renting it out, and that he has maintained his possession up to the present time, though it appears that the fence had disappeared at the time of the trial. We next find a certificate from the State Auditor of date June 12, 1908, as follows, to wit:

"I hereby certify that the records of the Auditor's office show that on Sept. 4, 1903, deed No. 1575 was issued to J. P. Martinez, under the provision of sec. 3 of Act 80 of 1888. This sale transferred to J. P. Martinez the property adjudicated to the state for the unpaid taxes of 1882 in the name of Anton Weber on March 4, 1885, and the property is described as follows: Certain lots of ground and improvements thereon in the Third district of the city of New Orleans in square No. 1179 bounded by New Orleans, Liberal, St. Bernard, and Force streets; said lots front on New Orleans street. The sale is made for the amount of $71.90, the amounts being paid as follows: [Then follows a distribution of the total amount paid, to the taxes of 1880 to 1902 and to costs and commissions.]"

The explanation of the fact that defendant produces the Auditor's certificate, instead of the original deed, is that the original deed was lost. Some time after the lapse of three years from the date of the last-mentioned deed, defendant advertised for the heirs of Anton Weber, probably with a view of obtaining a ratification of his title, but they were apparently unable to agree upon that subject, and the only effect of the advertisement appears to have been the institution by them of this suit. They attack defendant's title on the grounds that the property was never assessed; that, if assessed, it was in the name of a dead man; that the owners were not notified; that the description was insufficient; that the advertisement was insufficient; that no taxes were due. There was judgment in the district court in favor of defendant, which judgment was reversed by the Court of Appeal, on the ground that the description failed to identify the property.

## Opinion.

Defendant pleads the prescription of three years under article 233 of the Constitution, which declares that:

"No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired; or, within three years from the adoption of this Constitution, as to sales already made, and within three years from the recordation of the tax deed, as to sales made hereafter, if no notice was given."

The sale to the state, which constitutes the basis of the defendant's title, was made, as we have stated, on March 14, 1885, and was recorded on August 29th of the same year, nearly 13 years before the Constitution was adopted; and this attack was not made upon it until May 6, 1908, some 10 years after the adoption of the Constitution. The attack is therefore barred by the prescription established by the Constitution, unless found to be within either one or the other of the exceptions thereby established, or within some exception, held by this court to be necessarily implied therefrom. It has been held that it is immaterial for the purposes of the question to be here determined whether an

assessment has been made in the name of one person or another, or in no name, or whether the owner, not in possession, has been notified of the intention to sell or has not been notified, or whether the sale has been advertised or has not been advertised. Canter v. Williams, 107 La. 77, 31 South. 627; Crillen v. N. O. Terminal Co., 117 La. 349, 41 South. 645; Little River Lumber Company v. Thompson, 118 La. 284, 42 South. 284. As to the plaintiffs' allegation that no taxes were due, the answer is that it being admitted that none were paid, and it not being pretended that the property was exempt, the taxes were necessarily due, provided there was an assessment, and the tax debtor is barred by the constitutional prescription from contesting the fact of the assessment, save in connection with the assertion that the description in the tax deed and in the assessment fail to identify the property. The description, as found in the deed, reads (as we have stated):

"Certain lots of ground and improvements in the Third district of New Orleans, in square No. 1179, bounded by New Orleans, Liberal, St. Bernard, and Force streets; said lots front on New Orleans street. Which said property was duly and legally assessed for the taxes of 1883, * * * in the name of Anton Weber."

There could be no difficulty in finding the "Third district of New Orleans" or in finding the square, the municipal number, and street boundaries of which are thus given. Nor could there be any difficulty in finding "certain lots" belonging, or "duly and legally assessed for the taxes of 1883, * * * in the name of Anton Weber," since the assessment rolls were open to public inspection, and from the recitals of the deed we must assume that, if any further description were needed, it would be there found. But we are of opinion that no further description was needed, since the description as given included all the lots owned by Anton Weber in the particular square designated, and in the event of any dispute between the purchaser and other pro-

prietors they could have referred to their titles, which were also open to public inspection. If the description had read "a certain lot," etc., a different situation would be presented, as Weber owned several lots, and it would be impossible to determine which of them was intended. And so, if one should sell his "forty-acre tract in S. E. ¼ of sec. 9," etc., and it appeared that he owned three of the four "forties" in that quarter section, there would be no identification of the property intended to be sold. On the other hand, if it appeared that he owned but one of the "forties," the identification would be found in the fact that he sold the "forty" that he owned, and in case of necessity such identification might be completed by proof, aliunde the title, of possession, by the vendor or the vendee, or of any other relevant facts. In re Lockhart, 109 La. 747, 33 South. 753; New Orleans Land Co. v. National Realty Co., 121 La. 200, 46 South. 208; Gouaux v. Beaullieu, 123 La. 684, 49 South. 285. In the case last above cited, the syllabus reads, in part, as follows:

"As a fact, the defendants have identified and taken possession of the land, it being the exact quantity of land, and the only land, owned by the person in whose name it was assessed, in the section, township, and range mentioned, according to the official maps."

And so it may be said here: The defendant before the court has been in possession, for many years, of the only land in the square described in the tax deed which was owned by the party assessed, and, for more than three years prior to the institution of this suit had paid the taxes on it, as owner, under said deed. Plaintiffs, on the other hand, have never been in possession, have never, until recently, known of their supposed title, and have never paid any taxes. We are of opinion that they have slept too long upon their rights.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Ap-

peal, here made the subject of review, be avoided and reversed, and that the judgment of the district court, from which the appeal was taken, be affirmed, plaintiffs to pay all costs.

LAND, J., dissents.