## GOERTZ v. MENARD.

### No. 1587.

Court of Appeal of Louisiana. First Circuit. Third District.

June 9, 1936.

Harvey E. & Frank B. Ellis, of Covington, and Charles E. De La Vergne, of New Orleans, for appellant.

S. W. Provensal, of Slidell, and B. M. Miller, of Covington, for appellee.

JOHNSON, Judge ad Hoc.

This is a jactitation suit in which plaintiff, alleging himself to be the owner and in possession of a certain tract of land described at length in his petition and being situated in the parish of St. Tammany, claims that the defendant has slandered his title thereto by having caused to be recorded in the conveyance records of the parish a certain act of sale to defendant by the sheriff of the parish in the succession proceedings of Mathilda Cummings, deceased, and by also causing to be recorded in the conveyance and mortgage records an affidavit of defendant declaring that plaintiff is not the owner of said property, but that he (defendant) is the owner thereof. He alleges that the order of the clerk of court under which the property was sold by the sheriff in the said succession proceedings is null, void, and of no effect for the reason that when said order was issued the property already belonged to him (plaintiff), he having acquired said property in the year 1922 and Mathilda Cummings having died in the year 1925. In the alternative he alleges that the order of the clerk of court to sell the said property, being an order to sell to pay debts, is null for the reason that no list of debts was annexed to the application for the order to sell said property for the purpose of paying said debts. He alleges damages in the sum of $500 and also claims $250 as attorney's fees. He prays for judgment for said damages and attorney's fees and that defendant be ordered either to disclaim title to the said property or else assert such rights as he may have against said property, and finally that the inscription of said title and affidavit be ordered erased from the records.

◼ Defendant's first plea was an exception of misjoinder based on the ground that defendant's title complained of by plaintiff only conveyed to defendant an undivided five-eighths in the property and that defendant's co-owners in indivision whom he names in his exception should have been made parties defendant with him. The exception was overruled, and although a bill was reserved no complaint on account of said ruling is urged before this court. Where no error in the ruling of the lower court on an exception is pointed out and urged by neither argument nor brief, the ruling will be presumed to be correct and to have been accepted as such and the point raised by the exception abandoned. This course was recently followed by this court in the case of Witson v. Joseph, 158 So. 661.

What has just been said regarding the exception of misjoinder will also apply to the exception of no cause or right of action which was the next plea filed by defendant. The exception was based upon failure of the petition to allege malice. The court sustained it as to claim for damages but reserved to plaintiff the right to amend which was done. Defendant makes no complaint in this court on account of said ruling, and it will be presumed that defendant either accepts the ruling as correct or has abandoned the point raised by the exception. Plaintiff amended his petition supplying the allegation of malice.

Defendant's next plea bears no particular name or style. The plea challenges the right of plaintiff to maintain his action on the ground that plaintiff was not in possession of the property, the contention being that possession of the property in the plaintiff is a necessary requisite before plaintiff can maintain the action of jactitation. The court heard testimony on the question of possession and overruled the plea assigning well-considered written reasons.

◼ Without discussing further the character of the plea or whether or not it should have been referred to the merits as being a defense to be pleaded by answer rather than by exception, after having reviewed the testimony, we agree with the able judge of the lower court that the acts of possession by plaintiff shown by the testimony show sufficient possession in plaintiff to maintain the possessory action.

According to the testimony, plaintiff cut and removed about seven cords of wood from the land. Witness Robert Rain-

ey, who bought some of the wood, testified that he hauled it off the property and that it was stacked on the land before being hauled. Octave Cummings worked for Rainey and cut the wood. He was married to Mathilda Cummings and knows the property well. Also the testimony shows that plaintiff leased the property for mineral rights on two different occasions, once to Roxana Petroleum Company and another time to other parties. The plaintiff had the property watched at certain times and he paid the taxes on it up to the date of filing his suit. All of these constitutes acts of possession sufficient to maintain the possessory action. See Miller v. Albert Hanson Lumber Company, 130 La. 662, 58 So. 502, and Perry v. Board of Commissioners, 132 La. 415, 61 So. 511.

In his answer defendant urges that plaintiff is estopped from asserting title to the property for the reason that he stood by and allowed the property to be sold in the proceedings had in the succession of Mathilda Cummings without protest although he had knowledge thereof personally or through his attorney. He then sets up the following contentions: (1) He denies that plaintiff is the owner of the property, and asserts that he (defendant) is the owner thereof by virtue of his purchase at the said succession sale of a five-eighths interest, and that plaintiff is without right to attack in a collateral manner the judgment rendered in said succession proceedings. (2) He urges that plaintiff's alleged title acquired at tax sale under 1921 assessment made in name of "Unknown Owners" is null for the following reasons: (a) That the tax sale is based on an assessment in name of "Unknown Owners," when as a matter of fact the owners were known to the assessing authorities; (b) that the description under which the property was carried on the assessment rolls was too vague and indefinite to sufficiently identify the property so as to make a valid adjudication for nonpayment of taxes; (c) in the alternative, that if the alleged tax title acquired by plaintiff does cover property claimed by defendant, plaintiff's said tax title is without effect for the reason that the title to the property at that time was vested in the state of Louisiana under an adjudication to the state for the unpaid taxes of the year 1883, and again under an adjudication to the state for the unpaid taxes of the year 1899, both of which adjudications to the state being duly recorded in the conveyance records of St. Tammany parish and no redemption from said tax adjudications to the state having been effected; and (d), also in the alternative, that plaintiff's alleged tax title is null and void for the reason that when he became the purchaser, by his own admissions, he was acting as the agent of the tax debtor, Mathilda Cummings, taking title in his own name to protect her title to said property. He alleges that the title to said property which vested in the state under the adjudications for nonpayment of taxes continued in the state until defendant redeemed said property from said adjudications in the year 1928, which completed defendant's chain of title which he sets up in detail.

The district judge in a written opinion discusses practically all of the defenses and disposes of them all adversely to the defendant rendering judgment for plaintiff as prayed for, except as to damages and attorney's fees which were rejected. Plaintiff has answered the appeal praying for an amendment to the judgment as respects claim for damages and attorney's fees.

In cases of this kind, when the right of the plaintiff to maintain the action has once been recognized, and the defendant has been required to assert his title in defense of plaintiff's claims, we believe it is well settled that the defendant then becomes the plaintiff in a petitory action, as it were, and must assume the burden of sustaining his title and the real plaintiff in the suit stands in the position of a defendant in the petitory action. The well-known maxim that "the plaintiff in a petitory action must recover on the strength of his own title and not on the weakness of his adversary's" would then seem to apply. We think the first question for this court to examine is the strength of defendant's title to the property involved in the light of the testimony submitted. If we find that title good and valid, it will be unnecessary to review the decision of the lower court on all the points of attack leveled at plaintiff's alleged title.

The district judge correctly appraised the significance of the evidence tendered by the defendant in his answer and proof showing adjudications of certain property (alleged by defendant to be the property involved) to the state of Louisiana for the

nonpayment of taxes under assessments made first in the year 1883 and second in the year 1899. In this connection the court said: "It is clear if either of the above adjudications to the State included the land embraced in the tax title under which the plaintiff is claiming, and if the adjudications to the State are valid, it follows as an inescapable consequence that plaintiff's tax title is null and void, as property previously adjudicated to the State under a valid assessment and adjudication cannot subsequently be assessed and sold under the name of Unknown Owners and vest the purchaser at such tax sale with a good title. Neal v. Pitre, 142 La. 737, 738, 77 So. 582." But the district court held that neither of the adjudications to the state were good and valid, first, for the reason that the description of the property in both cases was too inaccurate and uncertain to fulfill the requirements of law and in support of that view cited the case of Posey v. City of New Orleans et al., 113 La. 1059, 37 So. 969; and, second, that the record shows that Charles Anderson or Henderson in whose name the assessment and adjudications were made to the state in 1883 and 1899 was the owner of only one-half interest in the land adjudicated, and that under such assessment the land could not be adjudicated in its entirety.

Upon an examination of the testimony, we find extracts from the conveyance records and certificates of the clerk of court, all verified by the testimony of the clerk of court, showing that the description of the property assessed in the year 1883 in name of Charles Henderson and adjudicated to the state for the nonpayment of the taxes is in the following words and figures, to wit: "200 acres in the Jules A. Blanc tract on Bayou Pacquet." Also said proof shows that the description contained in the adjudication to the state under assessment in name of Charles Anderson or Henderson in year 1899 is as follows, to wit: "290 A; 30 acres & imp. & 260 acres unimproved, West side Bayou Pacquet, a portion of Zenon Millon Spanish Grant."

Defendant's chain of title is founded in the original patentee of the tract of land originally known as Zenon Millon's Plantation or Jules A. Blanc tract. The record shows that patent was delivered by the United States to Zenon Millon May 4, 1847, a tract of land fronting on Bayou Pacquet (being Spanish Grant No. 41, township 9 south, range 13 east, in the parish of St. Tammany), but in all of the early transfers the land is referred to as the Zenon Millon's Plantation or the Jules A. Blanc tract. The record shows a deed in notarial form dated February 12, 1866, executed by Jules A. Blanc as syndic of his creditors in favor of James McConnell describing the property as Zenon Millon's Plantation and with other descriptive terms states that it fronts upon Bayou Pacquet, and stating that the property was acquired by Le Blanc on July 7, 1855, from succession of Millon. Jas. McConnell conveyed by notarial act dated April 9, 1869, to George Amos and Charles Henson (Henderson), a tract of land being the extreme northern or upper part of a certain tract of land known as Zenon Millon's Plantation, and using other descriptive terms and stating that it is a part of same land acquired from creditors of Jules A. Blanc. Quotations from proceedings had in the succession of Lucinda Ferguson and Charles Henderson found in defendant's answer, which proceedings were had as far back as 1915, we find that George Amos, referred to above as the joint purchaser with Charles Henson (Henderson) from Jas. McConnell, was, at the time of the purchase, the second husband of Lina Henderson Amos, and that George Amos died in 1881 without issue. Charles Henderson (referred to in above mentioned deed as Charles Henson) was a son of Lina Henderson Amos, and was married to Lucinda Ferguson prior to the joint purchase with Amos. Charles Henderson was one of four children and heirs of Lina Henderson-Amos and he inherited one-fourth of her estate which included the interest acquired by George Amos in the tract of land purchased jointly with Charles Henderson (Henson), Lina Henderson-Amos having acquired said interest at the death of George Amos who left no forced heirs. Thus Charles Henderson acquired and owned an undivided five-eighths interest in the whole tract. Judgment rendered in said succession September 20, 1915, recognizes Mathilda Henderson Page (who later became Mathilda Henderson Cummings) as the owner of said five-eighths interest which she acquired as the sole heir of her father and mother, Charles and Lucinda Henderson. Defendant acquired said five-eighths interest at Sheriff's sale in re succession of Mathilda Henderson Cummings, deceased, November 5, 1926. Defendant redeemed the adjudications made

to the state for taxes assessed in name of Charles Henderson in 1883 and 1899, and the register of the state land office issued his certificate of redemption dated July 28, 1928, covering property adjudicated in 1883, and also a similar certificate dated August 16, 1928, covering the property adjudicated to the state for taxes assessed to said Henderson in 1899. Both original acts are in evidence and show that they were promptly recorded in the parish of St. Tammany.

■ Is the description of the property as it appears in either of the assessments and corresponding adjudication to the state of Louisiana, sufficient to afford a proper identification of said property and constitute a valid adjudication? The description of the land in the 1883 adjudication contains the identifying feature of placing the property "in the Jules A. Blanc tract on Bayou Pacquet." From the history of the tract of land, above set out, it will be seen that these terms of identification had a definite and well-known meaning. The description contained in the 1899 adjudication, in addition to locating said property on west side of Bayou Pacquet, also contains the distinguishing clause identifying the land as being "a portion of the Zenon Millon Spanish Grant." This statement is as definite and certain as if the description had located the property as being a portion of section or headright No. 41 on west side of Bayou Pacquet.

Aside from the consideration of the description of the property itself, standing alone, being sufficient or insufficient to properly identify the property, we have the rule recognized in Schwartzenberg v. Schwartzenberg, 138 La. 294, 70 So. 230, and in other cases, that where the description may be said to serve as the beginning of proof it may be completed by evidence aliunde of possession or other relative facts. This case was cited with favor in the decision of this court in the case of Cannon v. Hart, 154 So. 745, and it was there held, on further authority cited, that one of the important facts which may be used to supply further identification was that the tax debtor owned no other property in the particular locality or subdivision in which the property sold was assessed to him. There is strong and undisputed testimony in the record, including certificate and testimony of the clerk of court, that at the time of the tax adjudications Charles Henderson owned no other property in the parish of St. Tammany.

In the case of Schultz et al. v. Kellar et al., 17 La.App. 651, 136 So. 220, 222, also a case decided by this court in 1931, wherein a tax sale to the state formed a link in chain of title which was called in question, the description of the property adjudicated to the state did not have as definite identifying features as is found in the 1899 adjudication with which we are dealing. In the Schultz Case the description complained of was as follows: "160 acres of land and improvements east of Bayou Lacombe situated in the Parish of St. Tammany, assessed in the name of Paul Smallwood." Another charge leveled against the description in said case was that Smallwood only owned 80 acres while the assessment was for 160 acres. This court held that the property was sufficiently identified as that which the tax debtor owned at the time of the assessment and tax sale. The court also found that the fact that the assessment and the adjudication calls for 160 acres when Paul Smallwood only owned 80 acres is unimportant, and referred to section 4 of Act No. 140 of 1890, which expressly provides that error in dimension shall not be ground for setting aside an assessment and tax sale. In support of its conclusions the court, in the Schultz Case, cites numerous decisions of the Supreme Court of this state in which tax adjudications were upheld against attack made on account of indefinite description of the property covered by the assessment and by the adjudication. An examination of these references shows that in most of the cases the description of the property as to its identifying features was no better if as good as the description in the present case under consideration as relates to the tax adjudication of 1899. In one of the cases cited, In re Perrault's Estate, 128 La. 453, 54 So. 939, 940, the description under which the assessment and tax adjudication was made was as follows: "Heirs of C. L. and J. L. Williams, 960 acres, swamp land, in T. 6, R. 5 E., parish of St. Landry." Regarding that description and adjudication the Supreme Court said: "This description, mentioning, as it does, only the township, would not have identified the land, and the tax sale would therefore have been null, if the tax debtors had had any other land in that township; but this 960-acre tract was all they had, hence this description, imperfect as it was, identified their land, since it applied to it and to none other, and was therefore, sufficient." Weber's Heirs v. Martinez, 125 La. 663, 51 So. 679; Landry

752

et al. v. McWilliams, 135 La. 655, 65 So. 875 (and many other cases).

The district judge in his opinion raises the question that the record does not contain any proof that the proper notices and advertisement, etc., was made in order to support the adjudication. Section 5 of Act No. 105 of 1874, provides that: "Any action to invalidate the titles to any property purchased at tax sale under or by virtue of any law of this State, shall be prescribed by a lapse of 3 years from the date of such sale." Then we have the provisions of sections 3 and 4 of Act No. 140 of 1890, article 233 of the Constitution of 1898, Act No. 185 of 1904, and section 11 of article 10 of the Constitution of 1921 (as amended [see Act No. 4 of 1927, Ex.Sess. § 1]), all supporting tax adjudications against attack on account of informalities. Under the provisions of above section of Constitution of 1898 and 1921, no sale of property for taxes shall be set aside for any cause, except upon proof of dual assessment or payment of the taxes, unless the suit to annul is instituted within three years.

The district judge also referred to the fact that at the time of the adjudications for taxes under assessment in name of Charles Henderson he only held title to an undivided one-half interest in the property adjudicated, and for that reason the adjudications were not valid. We do not think that the fact that Henderson only owned one-half or five-eighths of the property is important. The adjudication was made and recorded and remained unchallenged until redeemed by defendant who had acquired title to five-eighths interest. He redeemed for himself and his co-owners.

We hold that defendant's title is good. It will be unnecessary that we review further the decision of the lower court. Therefore the judgment of the lower court is reversed, and it is now ordered that there be judgment herein in favor of the defendant, L. V. Menard, and against the plaintiff, John W. Goertz, rejecting said plaintiff's demands, decreeing that the purported tax sale under which plaintiff claims title to the property described in his petition is null and void, and that defendant's title to the property described in sheriff's deed from succession of Mathilda H. Cummings, dated November 5, 1926, and recorded in Conveyance Record No. 96, page 507, of the Parish of St. Tammany, is good and valid as relates to any claims by, through, or under said plaintiff. Plaintiff to pay all costs of suit in both courts.

OTT, J., recused.